Good morning, and may I please the Court, Alison Ellert, on behalf of Objector Appellant Dorian Ceron. With the Court's permission, I'd like to reserve two minutes of time for rebuttal. Sure, just keep your eye on the clock. I will do so, Your Honor. Mr. Ceron... It's Alison... Ellert, Your Honor. Okay. Mr. Ceron has appealed the District Court's order granting final approval to a wage and hour class action settlement that was brought in Ballou v. Brinks. Now, we contend that the settlement has to be vacated because it entails a release of four distinct claims that were never pleaded, never litigated, and never valued in the Ballou action, and for which the class received zero compensation. Now, we think that this record raises an inference that in pursuing their desire to settle, the only claim raised, the only substantive claim raised in the Ballou matter, an overtime compensation claim, that in so doing they sacrificed the claims of absent class members. Remind me what the standard of review for us is. Your Honor, when it comes to this Court's passing on the ultimate fairness of the settlement agreement, it is a deferential abuse of discretion standard. But over and over again in this Court's jurisprudence, it's made clear that it brings a heightened scrutiny to bear on pre-certification settlements, which is what we have here, and that it is also very circumspect in examining the procedures through which the district court reached its ultimate approval of the fairness of the settlement. Now, the Ballou action was filed in May 2014. The parties mediated their dispute in September 2014, but that was unsuccessful. In November 2014, a separate action called Walker was filed in the Central District of California. It raised the same unpaid overtime compensation claim as Ballou, but it also pleaded meal and rest break violations. Are you counsel in that case? I am not counsel in that case, but trial counsel for Mr. Soran and Mr. Walker are cooperating. They're litigating together, although their cases, of course, are presently stayed. So in November of 2014, Walker is filed. About a month later in December 2014, the Ballou and Brinks parties mediate again, and this time they're successful, and they're successful because they agree to this broad release. Excuse me. I do want you to continue here. I just need one small clarification. Your client was a member of both classes? Of both the Ballou and, of course, the case he brought, the Soran case. Yes, he's a member of both classes. Okay. But opted out? He objected below. Objected. Which is why he has a right to appeal here. Right. So he didn't opt out of Ballou. He objected. He did not opt out. He stayed in and objected. That's correct. And then has his own class action, raising some of the same claims and additional claims. That's right. So Mr. Soran's complaint was filed in February of 2015, which is shortly before the Ballou party signed their stipulation of settlement and a few months before the preliminary approval hearing. So Mr. Soran also raises the unpaid overtime compensation claim, in addition to meal and respite claims. Now, turning back to the overbroad release here, it releases four distinct claims, factually and legally distinct, that were never pleaded or litigated in Ballou. Those include an unreimbursed expenses claim, a minimum wage claim, and then the meal and respite break claims. Now, you can scour this record and you are not going to find so much as an assertion by counsel below that they did anything, even discuss, let alone gather any evidence and put it before the district court concerning the minimum wage claim or the unpaid unreimbursed expenses claim. There is nothing at all, not a scintilla of evidence, that would have enabled the district court judge to come to a well-reasoned and informed conclusion that those claims could be released as part of this settlement without any consideration to the class. So on that basis alone, this settlement needs to be vacated. Now, turning to the meal and respite violations. When you say vacated, you want it simply set aside and sent back. You're not asking for us to slice out your client's claims. No, I'm not asking for that. The overtime claims, the ones that were not initially in this case. That's right, Your Honor. I don't even think under this court's authority it has the ability to look piecemeal at the components of the settlement. Oh, just watch us. We can do marvelous things here. I forgot I'm in the Ninth Circuit. The Second Circuit does pretty marvelous things. We're very conservative. Very conservative back east. We just call balls and strikes. But I, without sort of worrying too much about what we have authority to do or not, I'm trying to get the question of what you think we, you want us to set aside the whole thing. That's right. That's right. We want you to vacate the whole thing because there was not evidence before the district court for that court to conclude that all of these claims could be released. And so the whole thing needs to go back on that basis. When you say the whole thing, could you be more precise? Well, I think this court needs to vacate the entire settlement. It needs to remand the case back to the district court. If the Ballou and Brinks counsel think that they can make a record showing that these four claims were adequately investigated, analyzed. But as a practical matter, class action number two, you expect is going to trump that proceeding, right? You're talking about Mr. Soran's separate complaint? Yeah, the separate, the second class action. No, it won't because his meal and rest break claims, at least for the 16-month period that applies to this settlement, have been compromised. Those claims are now gone as a result of this settlement. Yeah, I have a question that relates to my colleague's question. My understanding is that you raised two concrete arguments. One is that the claims your client, Soran, describes Ballou did not even and his class did not even possess, and they're very different from what's described in the complaint. They are very different. Doesn't that lead to the logical conclusion, if we were to agree with you, I'm not saying we will, but if we were to agree with you, that the proper solution is to direct the district court to slice out Soran's claims? I think that would be a great solution. Isn't that different than your response to my two colleagues' questions? Well, I understood Judge Kaczynski to be saying, couldn't this court simply carve out those claims? I'll leave it to you. And that's what I'm asking. Once again, I did not ask anything about our authority. I was asking about what you are seeking. Okay? You keep talking about what we can do. Believe me, we can do all sorts of stuff you can't imagine. So the question I was asking is, what relief are you seeking? And you seem to be giving a different answer to Judge Hawkins than to me. I mean, what's the matter? You don't think we talk to each other? I'm quite sure you do. I think a remand to the district court to carve out the four claims for which there is either no evidence or insufficient evidence that they could be properly released. So as a practical matter, from your perspective, what's the difference if we send it back to the district court with an instruction to do that or that we do it ourselves and say it's done? Putting aside the question that seems to worry me so much about whether we are exceeding our authority, let's say we got the authority somehow. Is there any practical difference to bother the district court with this? No, no. If this court determines it. You'd be happy with just having us slice out, if we had the power. Absolutely. Absolutely. Slice out and confirm the rest of the settlement on the wage claim. Right. Yes, we would be satisfied with that. But I would want to emphasize it's all four of these claims that I think need to be carved out, not just the meal period and rest break claims because, again, there's no evidence at all concerning the propriety of releasing the unpaid minimum wage claim or the unreimbursed expenses claim. So I just want to clarify that we don't want just to carve out of the two claims that Saron has presently pleaded. But, Ron, what are the claims in the separate class action? The Saron case pleads the overtime compensation claim and meal and rest break violations. Those are substantive claims. There are also some derivative claims. Okay, so that action has been stayed pending this appeal, correct? Correct. All right, so let's say just hypothetically we send this back to the district court for we vacate the settlement and send it back for further proceedings. The stay gets lifted? I believe that's correct, yes. And then similar claims then go forward in the Saron action? Correct, yes. So you've got two class actions covering similar territory? Well, certainly there would be one overlapping claim, the unpaid compensation claim, but the meal and rest break claims are presently not. They were never part of Baloo. They're part of Saron. Now, if Brinks wants to convene all counsel and talk about a global settlement, it can certainly do that, but that would be up to them. Otherwise, these two cases would proceed in parallel track. Unless the Court has any further questions, I will save my time for rebuttal. You have no time. Thank you, Your Honor. Fifteen seconds. Negative numbers. She owes us time. May it please the Court, my name is Jack Sholkoff, and I represent the Appellee Brinks Incorporated. The trial court in this case, exercising its discretion, approved the class action settlement. It was a relatively small. Why wasn't there a piece of discretion to approve settlement of claims that were not in the complaint? The reason I think that it's important to look at the context, and the context is that the trial court heard, reviewed the record, heard the argument of counsel, and the issue was significantly examined at the hearing about the meal and rest period issue, which is what the Saron case is largely about. What about the notice problems? I mean, you make claims, you send out notices to the class, people opt out, and they make decisions. How can you then add settle claims? What if all of a sudden you decide, oh, my God, there's a toxic tort claim, too? Some of these employees were, I don't know what your client does, but whatever it does, there was a leak of something. They drive armored trucks. I'm sorry? They drive armored trucks. Well, armored trucks, there we go. Armored trucks leaking, you know, something, and they have some health claim. Could you have settled that, too? No, because I think that the... Why not? The underlying claim and the complaint and the entire... You talked about it. You talked about it a lot, you know. Everybody talked about it at the hearing and said, well, you know, not only were they underpaid, but they also got sick. Well, I think that this was a wage and hour claim, and what was being settled were wage and hour disputes. So toxic torts typically are not wage and hour claims, and so they would be too far removed to be... Where does this too far removed standard come from? You're just making it up. Well, I think... I thought you settle actual claims that you bring. You either brought them or you didn't bring them. I haven't heard of any close enough standard, like this is something that is not what I brought, but it's close enough, whereas this other thing is too far removed. Is there some law on this? Look, you didn't cite any briefs that I've missed? No, Your Honor, and I think that when you look at the... There's no dispute about that, and I don't mean to suggest that it did. However, there is a business and professions code cause of action, claim for relief, in the complaint, that talks about underpayment of wages, and largely the complaint deals with overtime. And the decisions of this court... rest breaks. In the complaint, it does not. Or reimbursed expenses, right? It does not. In fact, reimbursed expenses are not a wage and hour claim at all. Well, they're certainly not wages. I understand that. It's not an hour claim, right? Any of the wages are hours, right? That's correct. Why is it more like toxic torts? Well, I think that it's not like toxic torts in that it deals with an employee being compensated, in that case, for expenses. Look, I am not going to... Let's say medical expenses. You know, I had these medical expenses because of this leakage that came from these trucks, and I asked them for a reimbursement for my medical expenses. I mean, you're in Never Never Land. I mean, if you go beyond what the complaint says, particularly when you're dealing with a class action, you're dealing with notice, those people out there who choose to either opt in or, I'm sorry, opt out or not opt out to go get their own lawyer. There are all sorts of decisions that class members make based on the allegations of complaint. How can you go beyond that? Is there any case you cite where this has happened? There is authority. The Seattle case, Class Plaintiffs v. Seattle, and both Raines-Pastabella v. Visa, talk about that a release does not only have to deal with the claims that are actually in the complaint, but also a claim based upon the same identical factual predicate. And if it is potentially available, and that language is used at the Officers for Justice case, that's 688. Wait. If what is potentially available? What is being released. In other words, the claim. Well, that doesn't make any sense. I mean, any claim is potentially available. Like, you know, the medical claim is potentially available. A toxic toy is potentially available. But that's not the analysis that has any relevance or makes any sense in this context. Well, I think the courts are talking about it being potentially available from the identical factual predicate. In other words. Yeah, they were driving the trucks and they got sick from seeping fuel. Exhaust fumes. Exhaust fumes leaked into the, the money got at the exhaust fumes right up into the cab of the car. Something like that. Well, I think that the cases talk about not having to be tied directly to the allegations in the complaint. Not the remedy. The remedy doesn't. But the claim, you can't have a different claim. I mean, reimbursement for expenses isn't just a remedy for, for, for overtime wages or for nonpayment of overtime wages. It's a different claim altogether. Isn't Officers for Justice on the cases that you cite all, don't they all involve remedies for claims actually made in the complaint? Well, I, I believe that the, the Raines-Postabella case involved the difference between, the claim was about, it was an antitrust claim that had been brought concerning, I think, fees that were being charged regarding use of credit cards. And the issue was whether somebody could bring a, a debit, a claim involving debit cards instead of charge cards. And they weren't exactly the same. And they involved different law and different remedies. And I, and I believe that the court in that case said that because they were all concerning essentially the, the credit cards engaging in similar violations, that the fact that they weren't pled was not necessarily dispositive and limited the, the ability to include it in, in a class. Similarly, and this is a district court case, the Cotter v. Lyft case that we cited in our papers. There was an additional gratuity claim involving the Lyft drivers that was not remotely discussed in the. Well, look, you know, we, we don't really pay that much attention to these district court cases. Let me ask you just something more fundamentally. I don't understand, and, and please help me with this, why the fact that I, I, I have a, a lunch break claim. There's a lawyer in a case that does not plead the case, does not plead the claim. Has a different claim. No class is ever certified, so I don't get any notice. The lawyer gets paid. My claim gets released. I don't get a dime. I didn't know about it. I didn't have an opportunity to, I didn't have notice or an opportunity to be heard before my claim was compromised. I don't get why this isn't just the most kind of garden variety violation of due process. Well, I think there's a couple of things that I would say to that. First, that the evidence in the record was that the plaintiff handling the blue, plaintiff's lawyer handling the blue case did an investigation for meal and rest periods, interviewed, according to her, about 60 people. This was presented to district court. The, the due process analysis doesn't have anything to do with how careful the lawyer was. Due process is, as we all know, about notice and an opportunity to be heard. So the fact that the lawyer studied some documents in dismissing claims he'd never pled that his client never had doesn't have anything to do with due process. Well, I think in the notice that was sent to the class, the release was included in that. So I'm not sure that it's, it's quite fair to say that, that the class members had absolutely no notice that meal and rest periods. They had noticed that some man who didn't represent me had compromised a claim of mine, which I never authorized him either directly or implicitly, you know, in Rule 23 context to bring. And the court blessed it without giving me an opportunity to get my money, protect my interest. Due process. Well, I would say that, since I know that my time's almost out, that if the court does not affirm the trial court's decision, which we think that this court should, that on remand it should affirm that part of the trial court's decision with regard to the claims you brought. That's correct. I have a different question. Is this entire matter capable of mediation? Well, it was. I mean, if this goes back, you've got a lawsuit on two fronts. Why wouldn't Brinks want to resolve all of this globally? Well, it might. You certainly, you represent Brinks, correct? That's correct. You do not represent the interests of the plaintiffs representing Mr. Ballew, right? That's correct. Why wouldn't you want to resolve the entire thing? Well, I mean, that's certainly something. Are you willing to participate in mediation? I think that. The court has some terrific employees of the court. They have no outside connection who are fully capable of resolving cases like this. Would your client be interested? I'd have to check with my client. Of course. And see what they say. And it's certainly something they wouldn't dismiss out of hand. How about the other side? Your Honor, we've reached. Go ahead. Counsel, first of all, we've reached out on multiple occasions. And although there has been an interest expressed previously, it's fallen on deaf ears over the last five, six months. So I assume that there's no current interest. Our mediators have a way of clearing up the hearing canals. So it's something to think about. All right. Thank you for your. Thank you. Unless the court has any further questions, we will submit. Okay. Thank you. The case is argued. We'll stand and submit it.
judges: Parker, Kozinski, Hawkins